Michele Floyd (SBN 163031)
mfloyd@srclaw.com
Adrianna A. Rubino (SBN 300951)
arubino@srclaw.com
**SACKS, RICKETTS & CASE LLP**
177 Post Street, Suite 650
San Francisco, CA 94108
Telephone: 415-549-0580
Facsimile: 415-549-0640

Attorneys for Defendant Dropbox, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID ANGEL SIFUENTES III,<br><br>Plaintiff,<br><br>v.<br><br>DROPBOX, INC.,<br><br>Defendant. | CASE NO.  4:20-cv-07908-HSG<br><br>**DEFENDANT DROPBOX, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:    January 20, 2022<br>Time:   2:00 p.m.<br>Dept.:   Courtroom 2 – 4th Floor<br>Judge:  Hon. Haywood S. Gilliam, Jr.<br><br><u>Filed herewith:</u><br>1.  Declaration of Wendy Weber<br>2.  [Proposed] Order |

-1-

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION ...................................... 5

STATEMENT OF RELIEF SOUGHT .................................................................................... 5

STATEMENT OF ISSUES TO BE DECIDED ....................................................................... 5

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................ 5

I.      INTRODUCTION .................................................................................................. 5

II.     STATEMENT OF FACTS ...................................................................................... 7

        A.      Plaintiff's Allegations ............................................................................... 7

        B.      The Terms of Service (TOS) ..................................................................... 7

                1.      The Dropbox Platform ................................................................... 7

                2.      Plaintiff Assented to the TOS ........................................................ 8

                3.      The TOS Contains a Broad Arbitration Provision That Delegates All
                        Gateway Issues to the Arbitrator ................................................... 9

                4.      Plaintiff Had the Right to Opt Out of the Arbitration Agreement and
                        Did Not .......................................................................................... 9

III.    ARGUMENT ........................................................................................................ 10

        A.      The Federal Arbitration Act Governs ..................................................... 10

        B.      The Court Must Compel Arbitration of Plaintiff's Claims Because Plaintiff
                Agreed to Arbitrate His Claims Against Dropbox .................................. 11

        C.      The Delegation Clause is "Clear and Unmistakable" and Thus Compels
                Arbitration of All Gateway Issues Including Scope ............................... 15

        D.      The Litigation Must Be Stayed Pending Arbitration ............................. 17

IV.     CONCLUSION ..................................................................................................... 17

-2-

DEFENDANT DROPBOX, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; CASE NO. 4:20-cv-07908-HSG

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265 (1995) ................................................ 11

5

*AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) ............................................................ 11

6

*Bradberry v. T-Mobile USA, Inc.*, No. C 06-6567 CW, 2007 WL 1241936 (N.D. Cal. Apr. 27, 2007) .................................................................................................................................... 12

7

*Bruni v. Didion*, 160 Cal. App. 4th 1272 (2008) .................................................................... 12, 15

8

*Cairo, Inc. v. Crossmedia Servs., Inc.*, No. C 04-04825 JW, 2005 WL 756610 (N.D. Cal. Apr. 1, 2005) .......................................................................................................................... 14

9

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126 (9th Cir. 2000) ............................... 12

10

*Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001) .............................................................. 11

11

*Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52 (2003) ..................................................................... 11

12

*Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213 (1985) ............................................................ 12

13

*DeVries v. Experian Info. Sols., Inc.*, No. 16-CV-02953-WHO, 2017 WL 733096 (N.D. Cal. Feb. 24, 2017) ........................................................................................................................ 14

14

*Dream Theater, Inc. v. Dream Theater*, 124 Cal. App. 4th 547 (2004) .................................. 15, 16

15

*First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938 (1995) ..................................................... 12, 15

16

*Fjeta v. Facebook, Inc.*, 841 F. Supp. 2d 829 (S.D.N.Y. 2012) .................................................... 14

*Giuliano v. Inland Empire Pers., Inc.*, 149 Cal. App. 4th 1276 (2007) ........................................ 11

17

*Grear v. Comcast Corp.*, No. C, 14-05333 JSW, 2015 WL 926576 (N.D. Cal. Mar. 3, 2015) ..... 17

18

*Henry Schein, Inc., v. Archer & White Sales, Inc.*, 586 U.S.    --, 139 S. Ct. 524, 202 L. Ed. 2d 480 (2019) .......................................................................................................... 6, 10, 15

19

*Kin Wah Kung v. Experian Info. Solutions, Inc.*, No. C 18-00452 WHA, 2018 WL 2021495 (N.D. Cal. May 1, 2018) ......................................................................................................... 11

20

*Larian v. Larian*, 123 Cal. App. 4th 751 (2004) ......................................................................... 12

21

*Larkin v. Williams, Woolley, Cogswell, Nakazawa & Russell*, 76 Cal. App. 4th 227 (1999) ........ 12

22

*Loewen v. Lyft, Inc.*, 129 F. Supp. 3d 945 (N.D. Cal. 2015) ....................................................... 13

23

*Malone v. Super. Ct.*, 226 Cal. App. 4th 1551 (2014) ................................................................. 16

24

*MediVas, LLC v. Marubeni Corp.*, 741 F.3d 4 (9th Cir. 2014) .................................................... 17

25

*Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201 (9th Cir. 2016) ................................................... 16

26

*Momot v. Mastro*, 652 F.3d 982 (9th Cir. 2011) ......................................................................... 16

27

*Nedlloyd Lines B.V. v. Super. Ct.*, 3 Cal. 4th 459 (1992) ............................................................ 13

28

*Portland Gen. Elec. Co. v. Liberty Mut. Ins. Co.*, 862 F.3d 981 (9th Cir. 2017) .......................... 16

-3-

DEFENDANT DROPBOX, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; CASE NO. 4:20-cv-07908-HSG

*Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63 (2010) .............................................................. 15, 16

*Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899 (Cal. 2015).......................................... 12

*Sandquist v. Lebo Auto. Inc.*, 1 Cal. 5th 233 (2016) ...................................................................... 15

*Selden v. Airbnb, Inc.*, No. 16-cv-00933 (CRC), 2016 WL 6476934 (D.D.C. Nov. 1, 2016)....... 14

*Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904 (N.D. Cal. 2011) ................................ 13

*Ticketmaster Corp. v. Tickets.com, Inc.*, No. CV997654HLHVBKX, 2003 WL 21406289
   (C.D. Cal. Mar. 7, 2003) ........................................................................................................ 14

*Tompkins v. 23andMe, Inc.*, 2014 WL 2903752 (N.D. Cal. June 25, 2014), *aff'd, 840* F.3d
   1016 (9th Cir. 2016)................................................................................................................ 13

*Trujillo v Gomez*, No. 14-cv-2483 BTM (BGS), 2015 WL 1757870 (S.D. Cal. Apr. 17, 2015) .. 12

*U.S. v. Sutcliffe*, 505 F.3d 944 (9th Cir. 2007)............................................................................. 11

*United States v. Drew*, 259 F.R.D. 449 (C.D. Cal. 2009) ............................................................ 13

*Vernon v. Qwest Commc'ns Int'l, Inc.*, 857 F. Supp. 2d 1135 (D. Colo. 2012), *aff'd*, 925 F.
   Supp. 2d 1185 (D. Colo. 2013) .......................................................................................... 12, 13

**Statutes**

9 U.S.C. § 1 ...................................................................................................................................... 5

9 U.S.C. § 2 ............................................................................................................................. 10, 11

9 U.S.C. § 3 .................................................................................................................................... 17

9 U.S.C. § 4 ................................................................................................................................ 5, 12

Cal. Code Civ. Proc. §§ 1281-1294 ............................................................................................... 12

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION

**TO PRO SE PLAINTIFF DAVID ANGEL SIFUENTES III:**

**PLEASE TAKE NOTICE** that on January 20, 2022 at 2:00 p.m., or as soon thereafter as this matter may be heard in Courtroom 2 – 4th Floor of the United States District Court for the Northern District of California, located at the Oakland Courthouse, 1301 Clay Street, Oakland, California 94612, Defendant Dropbox, Inc. ("Dropbox") will and hereby does move this Court for an order compelling Plaintiff David Angel Sifuentes III ("Plaintiff") to arbitrate the claims asserted in his Amended Complaint (the "Complaint") pursuant to the Federal Arbitration Act, 9 U.S.C. section 1 *et seq.*

This Motion is based on the ground that Plaintiff assented to a valid and enforceable agreement to arbitrate and has delegated all threshold issues of scope and enforceability to the arbitrator.

This Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities in support thereof, the Declaration of Wendy Weber and its exhibits filed herewith, the [Proposed] Order filed herewith, all the pleadings and papers on file with the Court in this action, and upon such oral and written evidence as may be presented at or before the hearing on this Motion.

## STATEMENT OF RELIEF SOUGHT

Dropbox seeks an order pursuant to 9 U.S.C. section 4 compelling arbitration of Plaintiff's claims.

## STATEMENT OF ISSUES TO BE DECIDED

1.      Whether Plaintiff's claims should be compelled to arbitration.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.      INTRODUCTION

This lawsuit cannot proceed in this forum because the claims at issue here are subject to binding, contractual arbitration.  Plaintiff David Angel Sifuentes III ("Plaintiff") alleges that his Dropbox account was compromised in a 2012 data breach.  He brings causes of action for invasion of privacy by public disclosure of private facts, negligence, intentional infliction of

1    emotional distress, conversion, and violation of the Fair Credit Reporting Act and Fair and

2    Accurate Credit Transactions Act of 2003, California Civil Code section 1798.29, and Michigan

3    Law 445.72.

4         It is impossible to use Dropbox's services without first creating a Dropbox account and

5    agreeing to Dropbox's Terms of Service ("TOS").  Dropbox's business records confirm that

6    Plaintiff has a Dropbox account and has assented to multiple versions of the TOS.  The TOS

7    includes a mandatory arbitration provision that requires Plaintiff to arbitrate all disputes against

8    Dropbox that arise out of his use of the Dropbox platform and services.  Each cause of action that

9    Plaintiff alleges in his Amended Complaint ("Complaint") arises out of his Dropbox account.

10        On a motion to compel arbitration, this Court's inquiry is limited to two issues.  First, the

11   Court must determine whether Plaintiff assented to the arbitration provision.  Assent is

12   unquestionably established here because, as confirmed by Dropbox's business records, Plaintiff

13   assented to eleven versions of the TOS that included substantially the same mandatory arbitration

14   provision.

15        Second, the Court ordinarily must determine whether Plaintiff's claims fall within the

16   scope of the agreement to arbitrate.  However, when, as here, the arbitration provision, in express

17   language, delegates all threshold issues regarding the arbitrability of Plaintiff's claims, including

18   scope, to the arbitrator, the Court does not address the second issue.  Indeed, the Supreme Court,

19   the Ninth Circuit, and California state courts all agree that "clear and unmistakable" delegation

20   clauses are enforceable and, when present, all questions of arbitrability must be resolved by the

21   arbitrator, not the court.[1]  The delegation clause here is "clear and unmistakable" because it

22   directs the arbitrator to resolve all disputes "arising out of or relating to interpretation or

23   application of this 'Mandatory Arbitration Provisions' section, including its enforceability,

24   revocability, or validity."  *See* Declaration of Wendy Weber ("Weber Decl.") ¶ 21, Ex. P

25   (September 24, 2019 TOS), p. 3.  Accordingly, whether Plaintiff's particular claims fall within

26   the scope of the arbitration provision and whether any defense to arbitration exists are questions

27

28   ---
     [1] The Supreme Court confirmed this rule in *Henry Schein, Inc., v. Archer & White Sales, Inc.*, 586
     U.S.   --, 139 S. Ct. 524, 529, 202 L. Ed. 2d 480 (2019).

1   that must be resolved by the arbitrator, not this Court.

2          Because assent is easily established and the delegation clause is "clear and unmistakable,"

3   this Court must compel arbitration and stay this litigation under section 4 of the Federal

4   Arbitration Act ("FAA").

5   **II.      STATEMENT OF FACTS**

6          **A.      Plaintiff's Allegations**

7          Plaintiff alleges that in October 2020, he found out through Credit Karma that his

8   Dropbox account was compromised by a data breach that occurred in 2012.  Compl., p. 2.  He

9   further alleges that Dropbox did not inform him of this breach.  *Id.*  Without alleging any

10  supporting facts, Plaintiff concludes that "his personal information has been stolen for nearly two

11  years [allowing] plenty of time for hackers and cyber criminals to cause harm."  *Id.*  He further

12  alleges that as a result, he "now wastes his time always switching his password and making calls .

13  . . to protect his personal information" and as a result, has been "very mad, and sacred [sic],

14  worried, nervous and has trouble sleeping."  *Id.*, pp. 2-3.  As Plaintiff's sparse allegations make

15  clear, his allegations and claims against Dropbox arise directly out of his Dropbox account.

16         **B.      The Terms of Service (TOS)**

17                **1.      The Dropbox Platform**

18         Dropbox provides an intuitive, unified platform to keep users' content safe and accessible

19  while helping users and those they work with stay coordinated and in sync.  Weber Decl. ¶ 3.  As

20  the TOS makes clear, the things that users provide Dropbox, such as files and folders, belongs to

21  the users—Dropbox does not have any rights to users' content except for the limited rights that

22  enable it to offer its Services.  *Id.*  Dropbox's Services include (with permission from the user)

23  hosting users' content, backing it up, sharing it when asked, and features like commenting,

24  sharing, searching, image thumbnails, document previews, optical character recognition (OCR),

25  easy sorting and organization, and personalization to help reduce busywork.  *Id.*  Simply put,

26  Dropbox does not have any rights to users' content except for the limited rights that enable it to

27  offer its Services.  *Id.*

28  ///

1

## 2.    Plaintiff Assented to the TOS

2    The relationship between Dropbox and its users is contractual and governed by the TOS.

3    Before a prospective user can use Dropbox's platform, he must first consent to the TOS.  Weber

4    Decl. ¶¶ 5-6, 21, Ex. P (September 24, 2019 TOS), p. 1; *see also. id.* ¶ 10, Ex. E (July 6, 2011

5    TOS), p. 1.  At the time Plaintiff created his Dropbox account, the TOS was presented to

6    prospective users via a hyperlink, offset in blue font, located directly above the on-screen sign-up

7    button stating "Create account" that was presented during the account registration process.

8    Weber Decl. ¶ 6, Ex. A.  To complete the registration process, the prospective user had to consent

9    to the TOS by affirmatively checking a box stating "I agree to Dropbox Terms of Service" and by

10   further pressing a button stating "Create account."  *Id*.  If the prospective user did not click the

11   checkbox and the sign-up button, then the registration process ended and the prospective user

12   could not use Dropbox's platform.  *Id.*  In short, it is impossible to use Dropbox without first

13   assenting to the TOS.

14   Dropbox updates the TOS from time to time.  *Id.* ¶ 7.  When there is a material update to

15   the TOS, Dropbox notifies users by email which summarizes the changes and identifies where

16   further details can be found.  *Id.*  Dropbox added an arbitration provision to its TOS on or about

17   March 24, 2014 and notified users of the arbitration provision by email.  *Id.* ¶ 7, Ex. B.  When the

18   TOS is updated, existing account holders agree to the updated version by continuing to use

19   Dropbox's services.  *Id.* ¶ 7.  Plaintiff has continued to use his Dropbox account and Services to

20   this day and, in fact, has agreed to twelve updated versions since signing up for the account.  *Id.*

21   ¶¶ 8, 11-21.

22   Dropbox captures and records the date upon which each user opens an account and

23   likewise initially accepts the TOS then in effect in its business records.  Dropbox's business

24   records confirm that Plaintiff created a Dropbox account on December 15, 2011 and consented to

25   the July 6, 2011 TOS then in effect on that date.  *Id.* ¶ 10.  Dropbox's records further confirm

26   that, in addition to consenting to the TOS when he created his account on December 15, 2011,

27

28

Plaintiff subsequently assented to twelve updates.[2]  *Id.* ¶¶ 8, 10-21.  The September 24, 2019 TOS was in effect when Plaintiff filed his Complaint and therefore applies here.

### 3. The TOS Contains a Broad Arbitration Provision That Delegates All Gateway Issues to the Arbitrator

The TOS governs any and all use and access to Dropbox's services, client software and websites.  Weber Decl. ¶ 21, Ex. P (September 24, 2019 TOS), p. 1.

The arbitration provision on page 3 is broad and requires arbitration of all claims against Dropbox that relate to the TOS or Dropbox's services:

> *We Both Agree to Arbitrate.*  You and Dropbox agree to resolve any claims relating to these Terms or the Services through final and binding arbitration by a single arbitrator, except as set forth under Exceptions to Agreement to Arbitrate below.  This includes disputes arising out of or relating to interpretation or application of this "Mandatory Arbitration Provisions" section, including its enforceability, revocability, or validity.

*Id.,* p. 3.  The only exceptions to the arbitration agreement are lawsuits "solely for injunctive relief to stop unauthorized use or abuse of the Services, or intellectual property infringement (for example, trademark, trade secret, copyright, or patent rights)"—not at issue here.  *Id.*, p. 4.

The arbitration provision expressly delegates all gateway issues, including scope, to the arbitrator:  "This [the arbitration agreement] includes disputes arising out of or relating to interpretation or application of this 'Mandatory Arbitration Provisions' section, including its enforceability, revocability, or validity."  *Id.*, p. 3.

### 4. Plaintiff Had the Right to Opt Out of the Arbitration Agreement and Did Not

When Plaintiff first agreed to the arbitration provision in March 24, 2014, he had the express right to opt out of the agreement to arbitrate simply by submitting an online form:

[2] By not closing his Dropbox account at any time and continuing to use Dropbox's services, Plaintiff subsequently consented to the March 26, 2012 TOS, March 24, 2014 TOS, January 22, 2015 TOS, May 1, 2015 TOS, October 13, 2015 TOS, November 4, 2015 TOS, September 14, 2016 TOS, February 10, 2017 TOS, May 25, 2018 TOS, April 16, 2019 TOS, September 24, 2019 TOS, and July 6, 2021 TOS.  Weber Decl. ¶¶ 8, 10-21.

*Opt-out of Agreement to Arbitrate.*  You can decline this agreement to arbitrate by clicking here and submitting the opt-out form within 30 days of first accepting these Terms.

Weber Decl. ¶ 12, Ex. G (March 24, 2014 TOS), p. 2; *see also id.* ¶ 7, Ex. B ("Updates to the Dropbox Terms of Service and Privacy Policy" exemplary email informing existing account holders they could opt out of arbitration via an online form within 30-days of March 24, 2014), ¶ 21, Ex. P (September 24, 2019 TOS), p. 3 ("*Opt-out of Agreement to Arbitrate.*  You can decline this agreement to arbitrate by clicking here and submitting the opt-out form within 30 days of first registering your account.  However, if you agreed to a previous version of these Terms that allowed you to opt out of arbitration, your previous choice to opt out or not opt out remains binding.").  Plaintiff did not opt out.  Weber Decl. ¶¶ 7, 10.

## III.   ARGUMENT

Plaintiff is required to arbitrate his claims against Dropbox.  Plaintiff assented to the TOS and therefore agreed to be bound by its arbitration provision.  Moreover, the FAA governs because the arbitration agreement included in the TOS evidences a transaction involving interstate commerce, which dictates a strong federal policy favoring arbitration.  The only remaining issue is whether the delegation clause in the TOS, which delegates all threshold issues of arbitrability to the arbitrator, is enforceable.  The answer is clearly yes.  As the U.S. Supreme Court unanimously held, when a contract delegates threshold questions of arbitrability to the arbitrator, a court must honor the parties' contractual decision and refer the matter to arbitration without exception.  *Henry Schein, Inc.*, 139 S. Ct. at 530-31.

### A.   The Federal Arbitration Act Governs

The Federal Arbitration Act ("FAA")—and the body of federal law developed pursuant to it—governs the interpretation and application of arbitration agreements included in contracts evidencing a transaction involving interstate commerce.  9 U.S.C. § 2 ("A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable,

1    and enforceable, save upon such grounds as exist at law or in equity for the revocation of any

2    contract.").  Courts construe the phrase "evidencing a transaction involving commerce" "broadly"

3    because the FAA "embodies Congress' intent to provide for the enforcement of arbitration

4    agreements within the full reach of the Commerce Clause." *Giuliano v. Inland Empire Pers.,*

5    *Inc.*, 149 Cal. App. 4th 1276, 1286 (2007); *see Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513

6    U.S. 265, 273-74, 277 (1995) (noting threshold for establishing a "transaction involving

7    commerce" is low).  A contract evidencing a "transaction involving commerce" is one that

8    simply implicates the purchase or sale of goods or services in the stream of interstate commerce,

9    and nothing more.  *See, e.g.*, *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003); *Allied-*

10   *Bruce Terminix Cos., Inc.*, 513 U.S. at 273; *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 109-

11   18 (2001).

12        Dropbox provides Services through an online platform which is available and used world-

13   wide.  Weber Decl. ¶ 3.  Therefore, Dropbox's TOS necessarily implicates the stream of interstate

14   commerce and evidences a "transaction involving commerce."  The FAA therefore governs the

15   interpretation of the arbitration provision here.  *See U.S. v. Sutcliffe*, 505 F.3d 944, 952 (9th Cir.

16   2007) (stating "it seems clear that use of the internet is intimately related to interstate

17   commerce"); *Kin Wah Kung v. Experian Info. Solutions, Inc.*, No. C 18-00452 WHA, 2018 WL

18   2021495, at *2 (N.D. Cal. May 1, 2018) (finding that Intuit's payment processing service

19   QuickBooks had a sufficient nexus with interstate commerce not only as it pertained to the

20   plaintiff's individual use, but also in the aggregate as a general practice).

21        **B.     The Court Must Compel Arbitration of Plaintiff's Claims Because Plaintiff
22                 Agreed to Arbitrate His Claims Against Dropbox**

23        Section 2 of the FAA codifies a strong federal policy favoring arbitration, making

24   arbitration provisions "valid, irrevocable, and enforceable, save upon such grounds as exist at law

25   or in equity for the revocation of any contract."  9 U.S.C. § 2; *see AT&T Mobility LLC v.*

26   *Concepcion*, 563 U.S. 333, 339 (2011) (federal policy favoring arbitration requires rigorous

27

28

1    enforcement of arbitration agreements).[3]

2              The strong policy favoring of arbitration limits the court's inquiry on a motion to compel

3    arbitration to two issues:  (1) whether the parties agreed to arbitrate (*i.e.*, whether they assented to

4    the arbitration contract); and (2) if so, whether the agreement encompasses the asserted claims

5    (*i.e.*, whether the claims asserted are within the scope of the arbitration contract).  *Chiron Corp. v.*

6    *Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000); *Bruni v. Didion*, 160 Cal. App.

7    4th 1272, 1283 (2008).  In short, the two considerations are mutual assent and scope, and once the

8    court finds that both are satisfied (as they are here), it must compel arbitration.  *Dean Witter*

9    *Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (stating that the FAA "leaves no place for the

10   exercise of discretion by a district court, but instead mandates that district courts *shall* direct the

11   parties to proceed to arbitration on issues as to which an arbitration agreement has been signed")

12   (emphasis in original)); *Chiron Corp.*, 207 F.3d at 1130; *Bradberry v. T-Mobile USA, Inc.*, No. C

13   06-6567 CW, 2007 WL 1241936, at *4 (N.D. Cal. Apr. 27, 2007) (confirming inquiry limited to

14   assent and scope, citing *Larian v. Larian*, 123 Cal. App. 4th 751, 760 (2004)).  Here, because the

15   parties have agreed to delegate issues pertaining to scope and enforceability to the arbitrator,

16   assent is the only issue for this Court to resolve.

17             Dropbox's burden of establishing assent is not a heavy one, and it is easily satisfied here.

18   9 U.S.C. § 4; *see Vernon v. Qwest Commc'ns Int'l, Inc.*, 857 F. Supp. 2d 1135, 1148 (D. Colo.

19   2012), *aff'd*, 925 F. Supp. 2d 1185 (D. Colo. 2013) (explaining moving party's obligation is to

20   establish simple existence of arbitration agreement).  Because arbitration agreements are

21   contracts, assent is analyzed under "ordinary state-law principles that govern the formation of

22   contracts." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943-45 (1995) (arbitration is a

23   matter of contract law, and analysis turns on whether an agreement was formed).

24
_____
25   [3] Although the question here is one of federal law, California state law, which controls the rest of
     the TOS (*see* Weber Decl., 21, Ex. P (September 24, 2019 TOS), p. 4), also favors enforcement of
26   the arbitration agreement.  Cal. Code Civ. Proc. §§ 1281-1294; *Trujillo v Gomez*, No. 14-cv-2483
     BTM (BGS), 2015 WL 1757870, at *3 (S.D. Cal. Apr. 17, 2015).  California has a strong public
27   policy in favor of arbitration.  *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 935 (Cal.
     2015); *Larkin v. Williams, Woolley, Cogswell, Nakazawa & Russell*, 76 Cal. App. 4th 227, 229
28   (1999) ("It is well established that under California law there is a strong public policy in favor of
     arbitration.").

The TOS contains a California choice of law provision.[4]  Under California law, online contracts—like the TOS—are treated no differently than any other type of contract:  assent is established by either actual or constructive knowledge of contract terms, and courts uniformly recognize that affirmatively clicking an online "accept"-type button constitutes an objective manifestation of assent.  *Loewen v. Lyft, Inc.*, 129 F. Supp. 3d 945, 957-58 (N.D. Cal. 2015) (enforcing an arbitration provision within a TOS where plaintiffs had the opportunity to scroll through the terms prior to assent and then clicked "I agree" to assent to the terms of the TOS); *Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 910-11 (N.D. Cal. 2011); *see Tompkins v. 23andMe, Inc.*, No. 5:13-CV-05682-LHK, 2014 WL 2903752, at *5, 8 (N.D. Cal. June 25, 2014) (holding that plaintiffs received adequate notice and consented to the TOS—and the arbitration provision contained therein—where they clicked a button "during the account creation and registration process . . . that appeared near a hyperlink to the TOS to indicate acceptance of the TOS"), *aff'd*, 840 F.3d 1016 (9th Cir. 2016); *see also Vernon*, 857 F. Supp. 2d at 1149 (explaining actual or constructive notice of agreement terms manifests mutual assent).

"Clickwrap" agreements—such as the TOS—are enforceable because they require users to click "Agree" or an equivalent button.  The "click" constitutes an objective manifestation of assent to the contract terms.  *See Loewen*, 129 F. Supp. 3d at 957-58; *Tompkins*, 2014 WL 2903752, at *8; *Swift*, 805 F. Supp. 2d at 910-12 (holding that under California law, click-through agreements require acknowledgment of assent by click); *United States v. Drew*, 259 F.R.D. 449, 462 n.22 (C.D. Cal. 2009) ("Clickwrap agreements 'have been routinely upheld by circuit and district courts.'").

The evidence here establishes that Plaintiff had actual knowledge of the contract terms and did not opt-out of arbitration.  Plaintiff created his Dropbox account and was presented with the account creation screen (prospective users must create a Dropbox account *before* they can use the Dropbox services).  Weber Decl. ¶¶ 5-6.  The account creation screen clearly and

---

[4] *See* Weber Decl. ¶ 21, Ex. P (September 24, 2019 TOS), p. 4.  California courts routinely enforce choice-of-law provisions.  *Nedlloyd Lines B.V. v. Super. Ct.*, 3 Cal. 4th 459, 464-69 (1992).

1    conspicuously contained the statement "I agree to Dropbox Terms of Service." *Id.*  The phrase

2    was located directly above the "Create account" click button, Plaintiff had to click the check-box

3    next to the statement, and the terms "Dropbox Terms of Service" were offset in blue font and

4    hyperlinked so that if clicked, Plaintiff would have been taken directly to Dropbox's TOS then in

5    effect (the July 6, 2011 TOS).  *Id.*  Courts have routinely found that similar sign-up screens

6    constitute assent to online contracts.  *See Selden v. Airbnb, Inc.*, No. 16-cv-00933 (CRC), 2016

7    WL 6476934, at *5 (D.D.C. Nov. 1, 2016) (finding assent where Terms hyperlinked under sign-

8    up button);[5] *DeVries v. Experian Info. Sols., Inc.*, No. 16-CV-02953-WHO, 2017 WL 733096, at

9    *5, 7 (N.D. Cal. Feb. 24, 2017) (finding assent and compelling arbitration where Terms and

10   Conditions hyperlinked directly above "Submit Secure Order" button); *Fjeta v. Facebook, Inc.*,

11   841 F. Supp. 2d 829, 837-40 (S.D.N.Y. 2012) (finding assent where Terms of Use referenced and

12   hyperlinked under "Sign Up" button); *Cairo, Inc. v. Crossmedia Servs., Inc.*, No. C 04-04825 JW,

13   2005 WL 756610, at *5 (N.D. Cal. Apr. 1, 2005) (finding assent where website stated that "By

14   continuing past this page and/or using this site, you agree to abide by the *Terms of Use* for this

15   site" and where the "underlined and highlighted" phrase "Terms of Use" was a hyperlink to full

16   Terms of Use); *Ticketmaster Corp. v. Tickets.com, Inc.*, No. CV997654HLHVBKX, 2003 WL

17   21406289, at *2 (C.D. Cal. Mar. 7, 2003).  The consent language on Dropbox's sign-up screen is

18   clear and conspicuous, including hyperlinks to Dropbox's TOS, to which Plaintiff agreed before

19   using Dropbox's services.

20          When the TOS was updated on March 24, 2014, existing account holders were sent an

21   email titled "Updates to the Dropbox Terms of Service and Privacy Policy."  Weber Decl. ¶ 7 &

22   Ex. B.  The email notice summarized the material revisions to the TOS, including a specific

23   reference to the addition of the agreement to arbitrate in a separate bullet point.  *Id.*  The email

24

25   _____

26   [5] The *Selden* court noted that "any reasonably-observant user would notice the text and
     accompanying hyperlinks" on a "quick glance down the rest of the page" and that agreeing to
     online terms as a condition of using online services is now so "commonplace" that "[a]ny

27   reasonably-active adult consumer will almost certainly appreciate that by signing up for a
     particular service, he or she is accepting the terms and conditions of the provider."  *Selden*, 2016

28   WL 6476934, at *5.

1  explained that arbitration is a quick and efficient way to resolve disputes, that users could opt out

2  of arbitration via an online form within 30-days of March 24, 2014, and that the opt out form and

3  other details were available on Dropbox's blog.  *Id.*  Dropbox's business records confirm that

4  following the March 24, 2014 TOS update and notification email, Plaintiff did not submit an opt

5  out form within 30 days of March 24, 2014 and thus did not opt out of Dropbox's agreement to

6  arbitrate.  *Id.*, ¶ 10.  Dropbox's business records further confirm that Plaintiff did not close his

7  Dropbox account and it remains active today.  *Id.*  Accordingly, assent is clearly established.

8        **C.**      **The Delegation Clause is "Clear and Unmistakable" and Thus Compels**
9                   **Arbitration of All Gateway Issues Including Scope**

10        Because assent is established and the TOS delegates any remaining threshold issues of

11  arbitrability to the arbitrator, the only question remaining is whether the delegation clause is

12  enforceable.  Weber Decl. ¶ 21, Ex. P (September 24, 2019 TOS), p. 3; *see also id.*, Exs. C, M-O

13  (delegating disputes regarding "enforceability, revocability, or validity" of mandatory individual

14  arbitration provision to the arbitrator).  It is settled that when a contract expressly delegates

15  threshold questions of arbitrability, including scope, to the arbitrator, a court must honor the

16  parties' contractual decision and refer the matter to arbitration without deciding arbitrability:

17          When the parties' contract delegates the arbitrability question to an
18          arbitrator, a court may not override the contract.  In those circumstances,
        a court possesses no power to decide the arbitrability issue.  That is true
19          even if the court thinks that the argument that the arbitration agreement
        applies to a particular dispute is wholly groundless.
20

21  *Henry Schein, Inc.*, 139 S. Ct. at 529; *see also First Options of Chi., Inc.*, 514 U.S. at 943; *Rent-*

22  *A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68, 71-74 (2010) (upholding enforceability of an

23  "agreement to arbitrate threshold issues" regarding the arbitrability of the dispute); *Sandquist v.*

24  *Lebo Auto. Inc.*, 1 Cal. 5th 233, 243 (2016) ("'[W]ho decides' [issues of arbitrability] is a matter

25  of party agreement."); *Bruni*, 160 Cal. App. 4th at 1286 (explaining "[b]ecause the parties are the

26  masters of their collective fate, they can agree to arbitrate almost any dispute—even a dispute

27  over whether the underlying dispute is subject to arbitration."); *Dream Theater, Inc. v. Dream*

28

1    *Theater*, 124 Cal. App. 4th 547, 551, 557 (2004) (noting that who decides arbitrability depends on

2    the parties' contract, and compelling arbitration of gateway issues).

3         Delegation clauses are enforceable if they are "clear and unmistakable." *Rent-A-Ctr., W.,*

4    *Inc.*, 561 U.S. at 69 n.1, 79-80; *Portland Gen. Elec. Co. v. Liberty Mut. Ins. Co.*, 862 F.3d 981,

5    985 (9th Cir. 2017), *as amended* (Aug. 28, 2017) (parties may delegate the adjudication of

6    gateway issues to the arbitrator if they "clearly and unmistakably" agree to do so); *Momot v.*

7    *Mastro*, 652 F.3d 982, 988 (9th Cir. 2011); *Dream Theater, Inc.*, 124 Cal App. 4th at 552 (when

8    parties "clearly and unmistakably" delegate issues of arbitrability to the arbitrator, the arbitrator,

9    not the court, decides gateway issues of arbitrability).  Courts agree that express delegation

10   language in the arbitration agreement satisfies the "clear and unmistakable" standard.  *Rent-A-*

11   *Ctr., W., Inc.*, 561 U.S. at 79-80; *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1208-09 (9th Cir.

12   2016) (*en banc*) (evidence of a "clear and unmistakable" delegation includes "an express

13   agreement to do so"); *Momot*, 652 F.3d at 987-88 (holding issues of arbitrability delegated to

14   arbitrator where language of agreement clearly and unmistakably delegated gateway issues);

15   *Malone v. Super. Ct.*, 226 Cal. App. 4th 1551, 1560 (2014) (holding contractual language

16   constituted clear and unmistakable delegation).

17        The delegation language in the arbitration provision here is "clear and unmistakable."  It

18   expressly states that the arbitration agreement "includes disputes arising out of or relating to

19   interpretation or application of this 'Mandatory Arbitration Provisions' section, including its

20   enforceability, revocability, or validity."  Weber Decl. ¶ 21, Ex. P (September 24, 2019 TOS), p.

21   3.  Accordingly, the parties have expressly delegated all disputes concerning the validity,

22   enforceability, or interpretation of the arbitration provision to the arbitrator.[6]

23

24   ──────────────
     [6] Additionally, the arbitration provision incorporates the American Arbitration Association
25   ("AAA") Commercial Arbitration Rules, which give the arbitrator the authority to rule on his or
     her own jurisdiction.  Weber Decl. ¶ 21, Ex. P (September 24, 2019 TOS), p. 3; *see also* AAA
26   Commercial Rule R-7(a) available at www.adr.org, under "Rules" tab ("The arbitrator shall have
     the power to rule on his or her own jurisdiction, including any objections with respect to the
27   existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or
     counterclaim."); *Dream Theater, Inc.*, 124 Cal. App. 4th at 557 (parties' agreement to arbitrate
28   according to AAA Commercial Arbitration Rules was "clear and unmistakable evidence" of
     parties' intent that arbitrator would decide whether claim was arbitrable).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### D.      The Litigation Must Be Stayed Pending Arbitration

Section 3 of the FAA requires courts to stay litigation upon referring a dispute to arbitration.  9 U.S.C. § 3.  Here, a stay is appropriate because Plaintiff agreed to arbitrate all claims as well as any gateway issues of enforceability, revocability, or validity.  *MediVas, LLC v. Marubeni Corp.*, 741 F.3d 4, 9-10 (9th Cir. 2014) (adopting rebuttable presumption that actions are stayed pending arbitration if not expressly dismissed); *Grear v. Comcast Corp.*, No. C 14-05333 JSW, 2015 WL 926576, at *1-2 (N.D. Cal. Mar. 3, 2015) (staying litigation under FAA section 3 upon referring dispute to arbitration).

### IV.      CONCLUSION

The arbitration provision is clear, and so is federal and California law:  this case cannot proceed in this Court because Plaintiff assented to the arbitration provision and Plaintiff's claims fall squarely within its scope.  This Court should issue an order compelling Plaintiff to arbitrate his claims pursuant to Dropbox's TOS and stay the litigation pursuant to section 3 of the FAA.

Dated:  September 20, 2021                                SACKS, RICKETTS & CASE LLP


By: */s/ Michele Floyd*
MICHELE FLOYD
ADRIANNA A. RUBINO
Attorneys for Defendant
DROPBOX, INC.

-17-